**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Juan Gomez Razo,

        Petitioner

v.

Todd Blanche, et al.,

        Respondents

Case No.: 2:26-cv-00969-JAD-DJA

**Order Granting Habeas Petition and Denying Motion for Reconsideration**

[ECF Nos. 23, 26]

Petitioner Juan Gomez Razo is a Mexican citizen who entered the United States without inspection at an unknown date and location.  He was arrested by local law enforcement in November 10, 2025, and he was transferred to Immigration and Customs Enforcement (ICE) custody on March 13, 2026.  Razo was initially detained at the Nevada Southern Detention Center, but he was transferred to the Golden State Annex detention facility in McFarland, California, on March 29, 2026.  Razo has not been given a bond hearing during his pre-removal detention.  Razo seeks a writ of habeas corpus, alleging that the only statute that authorizes his detention is 8 U.S.C. § 1226(a), which provides noncitizens with the opportunity to seek bond, contest the denial of one, and appeal the immigration court's bond determinations.

I grant Razo's petition, joining the hundreds of district courts and the Second, Sixth, and Eleventh Circuits in rejecting the government's argument that 8 U.S.C. § 1225(b) authorizes the mandatory detention of noncitizens like Razo.  Razo was arrested while present in the United States and is thus not an "arriving alien" seeking admission, so the mandatory detention authorized by that statute does not apply to him.  The only plausible authority for his pre-removal detention is § 1226(a), which allows noncitizens to seek bond.  Razo was not given the

opportunity to meaningfully seek that relief during the four months that he has been detained, so I find that the appropriate remedy is to order his release.

**Background**

Petitioner Juan Gomez Razo is a citizen of Mexico.  He entered the United States without inspection at an unknown time and place.[1]  In July 2025, Razo was arrested by the Las Vegas Metropolitan Police Department for "assault on a protected person with a deadly weapon, battery with a deadly weapon, child abuse or neglect, residential burglary, and domestic battery."[2]  All of those charges were subsequently dismissed.[3]  ICE lodged an immigration detainer and took him into federal custody on March 13, 2026.[4]

Razo mailed his petition for a writ of habeas corpus on March 23, 2026, while he was detained at the Nevada Southern Detention Center in Pahrump, Nevada.[5]  On March 31st I appointed counsel, directed Razo to file a counseled amended petition, and prohibited the government from transferring Razo out of this district.[6]  But Razo was transferred to the Golden State Annex detention facility on March 26, 2026, so his counsel moved to have him transferred back to Nevada.[7]  After receiving supplemental briefing on Razo's transfer and the court's jurisdiction to retain this case, I denied that motion and concluded that I retained jurisdiction

---

[1] ECF No. 27-1 at 3.

[2] *Id.*

[3] *Id.* at 4.

[4] *Id.* at 3.

[5] *See* ECF No. 1-1 at 9.

[6] ECF No. 3.

[7] ECF No. 11.

over Razo because he filed his habeas petition while in custody within this judicial district.[8]  The government moves for reconsideration of that conclusion.[9]

Razo's counseled amended habeas petition contends that the government has subjected him to mandatory detention without the opportunity to seek bond based on an incorrect interpretation of 8 U.S.C. § 1225(b) and other provisions of the Immigration and Nationality Act.[10]  The government responds that its interpretation is correct and that Razo's petition should be dismissed because he failed to exhaust his administrative remedies.[11]

**Discussion**

**A.      This court has jurisdiction over Razo's claims.**

The constitution makes a writ of habeas corpus "available to every individual detained in the United States."[12]  That writ permits a person who is in custody to challenge the legality of his detention, and the court has the authority to release the petitioner if it determines that he is illegally detained.  The court's habeas jurisdiction encompasses a noncitizen's challenge to his detention under United States immigration laws.[13]

**B.      The government's exhaustion arguments are unavailing.**

The government moves to dismiss Razo's petition on the basis that he failed exhaust his administrative remedies.  It cites to the Ninth Circuit's opinion in *Laing v. Ashcroft*[14] to contend

---

[8] ECF No. 22.

[9] ECF No. 26.

[10] ECF No. 23.

[11] ECF No. 27.

[12] *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art 1, § 9, cl. 2).

[13] *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 517 (2003).

[14] *Laing v. Ashcroft*, 370 F.3d 994 (9th Cir. 2004).

that a petitioner must first seek a bond determination prior to filing a habeas petition.[15]  But the government's exhaustion argument cannot be squared with its primary contention in this case: that Razo is not entitled to any bond hearing because he is detained under § 1225(b)(2)(A).  The Ninth Circuit has explained that "the exhaustion requirement is prudential, rather than jurisdictional, for habeas claims."[16]  "[A] court may waive the prudential exhaustion requirement if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'"[17]

I find that exhaustion of remedies would be futile here.  In *Matter of Yajure Hurtado*, the BIA endorsed the government's broad application of § 1225(b)(2)(A) to petitioners like Razo and held that IJs lack jurisdiction to hear bond-determination requests from noncitizens subject to mandatory detention under that statute.[18]  Despite the fact that there is a class action currently pending in this district rejecting the government's § 1225(b)(2)(A) interpretation and enjoining the government from depriving noncitizens who should be detained under § 1226(a) of the opportunity to receive bond hearings, the government continues to press its theory that § 1225(b)(2)(A) and not § 1226(a) applies to Razo.  Plus, Razo has been detained for more than four months without a hearing, and only recently was the government forced to provide hearings to petitioners like him.  Under these circumstances, I find it appropriate to waive the exhaustion requirement because further irreparable injury would result in Razo's continued detention while he goes through the futile process of seeking a bond determination.

---

[15] ECF No. 27 at 7–8.

[16] *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017).

[17] *Id.* (quoting *Laing*, 370 F.3d at 1000).

[18] *Matter of Yajure Hurtado*, 29 I. & N. Dec 216, 229 (B.I.A. 2025).

**C.**     **Section 1225(b)(2)(A) does not apply to Razo because the government's interpretation of that provision is incorrect.**

The government contends that Razo is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). That provision requires mandatory detention "in the case of [a noncitizen] who is an applicant for admission, if the examining immigration officer determines that [a noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted."[19] The government contends that, though Razo has been residing in the United States and was arrested within the interior of the United States, he remains an "applicant for admission," is seeking admission, and thus falls under § 1225(b)(2)(A)'s mandatory-detention scheme. It contends that § 1226(a), which grants noncitizen detainees the opportunity for release on bond, applies only to noncitizens who entered the United States legally but stay in the country illegally (e.g., arriving on a time-limited student visa, but staying past the visa's expiration).

This interpretation of the INA's pre-removal detention provisions upends decades of well-settled practice and has been the subject of hundreds of court cases and a circuit split.[20] Before the switch, the government applied § 1226(a) to noncitizens already present within the United States who are inadmissible, while § 1225(b)(2)(A) was reserved for citizens seeking admission after lawfully entering the country at a border after inspection and authorization. The government contends that its new interpretation is more consistent with the statute's text.

---

[19] 8 U.S.C. § 1225(b)(2)(A).

[20] *Compare Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026); *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026), *with Cunha v. Freden*, 175 F.4th 61 (2d. Cir. 2026); *Lopez-Campos v. Bondi*, 175 F.4th 713 (6th Cir. 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, 175 F.4th 1258 (11th Cir. 2026). The Ninth Circuit has at least one pending appeal confronting this issue. *See Rodriquez-Vasquez v. Bostock*, Case No. 25-6842 (9th Cir.).

5

Considering the text, structure, and history of these provisions, I conclude that the government's new interpretation is incorrect. In the interest of judicial economy,[21] I incorporate by reference and adopt District Judge Richard F. Boulware II's statutory analysis of the INA in *Jacobo Ramirez v. Mullin*,[22] finding that § 1225(b)(2)(A) cannot be read to encompass noncitizens who are already present in the United States, as opposed to those detained at its borders. And to the extent that the government relies on the Fifth and Eighth Circuits' opinions finding that the government's interpretations are correct, I incorporate by reference and adopt the conflicting conclusion that the Second Circuit reached in *Cunha v. Freden.*[23] After careful review and consideration, I conclude that the reasoning in those opinions faithfully analyzes the statute and comes to the only plausible interpretation: § 1225(b)(2)(A) applies at the borders to noncitizens who seek admission to this country, and § 1226(a) applies to those noncitizens already present in the United States who are determined to be inadmissible and placed in removal proceedings. So, because it is undisputed that Razo was residing in the United States before he was arrested and is not "seeking admission" under § 1225(b)(2), it's § 1226(a) that governs his detention.

---

[21] *See, e.g.*, *Hernandez-Luna v. Noem*, 2025 WL 3102039, at *5 (D. Nev. Nov. 6, 2025) (noting that "much ink has been spilled on this [issue] in hundreds of orders issued in the last couple of months" and collecting cases).

[22] *Jacobo Ramirez v. Mullin*, 2026 WL 879799 (D. Nev. Mar. 30, 2026). Specifically, I incorporate sections IV and VI.C.1, 2, and 4s' findings and conclusions concerning the text and structure of §§ 1225 and 1226, the legislative history and purpose of the INA, and the prior agency practice.

[23] *Cunha*, 175 F.4th 61.

**D.      Razo's detention is governed by § 1226(a) and entitles him to certain due-process procedures that he has not received.**

   **1.      *Noncitizens detained under § 1226(a) are entitled to various procedures related to seeking release on bond.***

8 U.S.C. § 1226(a) governs detention "pending a decision on whether the [noncitizen] is to be removed from the United States." The statute permits a noncitizen held under this authority to be detained or released on bond and with conditions.[24] When a person is arrested under § 1226(a), an ICE officer makes the initial custody determination and may order release only if the noncitizen "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding."[25]

The noncitizen may then "request a bond hearing before an IJ at any time before a removal order becomes final" to contest the initial custody determination.[26] At that hearing, the IJ considers "various factors . . . including the individual's ties to the United States as well as his employment history, criminal record, history of immigration violations, and manner of entry into this country" to determine whether the noncitizen should remain detained or if release (on bond or with other conditions) is appropriate.[27] The noncitizen may be represented by counsel and can submit evidence in his favor.[28] He may also appeal the decision to the BIA.[29] A noncitizen detained under § 1226(a) may also request a redetermination hearing if he experiences a material

---

[24] 8 U.S.C. §§ 1226(a)(1)–(2).

[25] 8 C.F.R. § 236.1(c)(8).

[26] *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022) (citing 8 C.F.R. §§ 236.1(d)(1), 1003.19).

[27] *Id.* (citing *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006); 8 U.S.C. § 1226(a)(2)).

[28] *Id.* (citing 8 C.F.R. § 1003.19(b); *Matter of Fatahi*, 26 I. & N. Dec. 791, 792 (B.I.A. 2016)).

[29] *Id.* (citing 8 C.F.R. § 236.1(d)(1)).

change in circumstances.[30]  He can appeal the IJ's decision of that redetermination hearing to the BIA too.

### 2.      *Noncitizen detainees are also entitled to due process of law in immigration proceedings.*

"The Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings."[31]  But the amount of process due to noncitizens "must account for the government's countervailing interests in immigration enforcement—considerations that do not apply to U.S. citizens."[32]  The Ninth Circuit applies the three-factor test outlined in the Supreme Court case *Mathews v. Eldridge*[33] to determine whether a noncitizen's procedural due-process rights have been violated in immigration-detention situations like this one.[34]  Under *Mathews*, courts must consider "*first*, the private interest that will be affected by the official action; *second*, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and *finally*, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."[35]

The parties agree that Razo was not given any bond hearing at which the IJ determined whether Razo was a danger or flight risk because the IJ in his case believed that the court lacked

---

[30] 8 C.F.R. § 1003.19(e).

[31] *Rodriguez Diaz*, 53 F.4th at 1205 (quoting *Hussain v. Rosen*, 985 F.3d 634, 642 (9th Cir. 2021)).

[32] *Id.* at 1206.

[33] *Mathews v. Eldridge*, 424 U.S. 319 (1976).

[34] *Rodriguez Diaz*, 53 F.4th at 1207 (assuming without deciding that *Mathews* applies to a noncitizen's challenge to detention under § 1226(a)).

[35] *Mathews*, 424 U.S. at 335 (cleaned up).

jurisdiction to consider that relief under § 1225(b)(2)(A). "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary government action."[36] Razo has been detained for more than four months. But when evaluating Razo's interests under the first prong, the court "cannot simply count his months of detention and leave it at that."[37] It must also consider "the process he received during this time, the further process that was available to him, and the fact that his detention was prolonged due to his decision to challenge his removal order."[38] Here, Razo has received no process to challenge his detention, and the government's position that he is subject to mandatory detention under § 1225(b)(2)(A) forecloses his ability to seek any meaningful opportunity to be heard on his request for release on bond. I thus find that the deprivation of Razo's liberty interest weighs in favor of relief.

I also conclude that there is a substantial risk of erroneous deprivation of Razo's interest based on the government's reliance on § 1225(b)(2)(A)'s mandatory detention scheme. Razo has been detained for about four months, and throughout that time he has had no opportunity to contest his detention. I find that Razo suffers a severe risk of erroneous deprivation of his liberty interest absent these procedures, which also weighs in favor of relief.

It is undisputed that the government has a strong interest in enforcing immigration laws, protecting the public from "dangerous criminal" noncitizens, and securing the removal of noncitizens who are subject to final orders of removal.[39] But I cannot conclude that the

---

[36] *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *see also Hamdi*, 542 U.S. at 529 (finding that the interest in not being detained "is the most elemental of liberty interests").

[37] *Rodriquez Diaz*, 53 F.4th at 1208.

[38] *Id.*

[39] *Id.*

government's interests outweigh the petitioner's in this case.  The parties' interests are not mutually exclusive: the government's interest in enforcing the immigration laws and protecting the public from dangerous noncitizens can still be served while offering due-process protections to the noncitizens in its custody.  Under these circumstances, I find that release is the appropriate remedy for the continuing due-process violations Razo has suffered.[40]

**E.      The government's motion for reconsideration is denied.**

At the beginning of this case, Razo's counsel filed a motion to transfer him back to Nevada, contending that he was transferred to California soon after he mailed his habeas petition to this court and should remain in this district.[41]  Before ruling on Razo's motion to transfer, I issued a minute order suggesting that, because Razo mailed his petition to this court while he was still in Nevada, this court retained jurisdiction over his petition under the Supreme Court's guidance in *Ex Parte Endo*.[42]  But I ordered the parties to file supplemental briefs addressing "(1) why [Razo's] return to this district is within this court's authority to direct, (2) why his return is necessary to resolve this habeas proceeding, and (3) whether transfer to the district in which Razo is currently confined would be permissible and in the interests of justice."[43]

The government responded to that order and expressly agreed that this court "has jurisdiction to hear petitioners' case as that jurisdiction was vested upon the petition's filing and the transfer did not vitiate/void that in any way."[44]  It requested that Razo stay detained in

---

[40] *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (noting that release is the "typical remedy" for "unlawful executive detention").

[41] ECF No. 11.

[42] *Ex Parte Endo*, 323 U.S. 283 (1944).

[43] ECF No. 22 at 1 (cleaned up).

[44] ECF No. 21.

California, reasoning that "petitioner's return to Nevada would be an unnecessary expenditure of time and money" because this court already determined that it retained jurisdiction.[45]  I held that Razo's return to this district was unnecessary and denied his motion for transfer while retaining jurisdiction over his case.[46]

The government now seeks reconsideration of that conclusion, arguing that this court lacks jurisdiction "because [Razo] was transferred to the Golden State Annex in McFarland, California on March 29, 2026, prior to the [c]ourt's [o]rder" prohibiting the government from transferring Razo out of this district.[47]  It somehow read my jurisdictional statements in this case, combined with my decision not to transfer Razo back to this district, as an implication that "the [c]ourt did not have jurisdiction to order" Razo's transfer and thus that it does not have jurisdiction to hear his habeas petition.[48]

My order made no such implication.  I concluded that this court in fact has jurisdiction to hear Razo's case.  But I determined that, because jurisdiction attached at filing and the government opposed Razo's transfer back to Nevada, there was no need to move him in order to rule on his case.  The government's convoluted reading of my prior orders does not support the conclusion that this court lacks jurisdiction.

The government also backtracks on its prior concession that this court retains jurisdiction over Razo, merely contending that habeas "petitions generally are filed in the district court with jurisdiction over the filer's place of custody, also known as the district of confinement" and listing practical considerations that would make continuing this case in California more

---

[45] *Id.*

[46] ECF No. 22.

[47] ECF No. 26 at 1.

[48] *Id.* at 3.

efficient.[49]  But the government doesn't engage with the authority I cited in my order denying transfer, under which jurisdiction "attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change."[50]  So I deny the government's motion for reconsideration, reaffirm this court's jurisdiction over Razo and this case, and order the government to release him.

### Conclusion

IT IS THEREFORE ORDERED that petitioner Juan Gomez Razo's amended petition for a writ of habeas corpus **[ECF No. 23] is GRANTED.  Petitioner Juan Gomez Razo must be released from detention within four days of this order.**

IT IS FURTHER ORDERED that respondents must file and serve on defense counsel:

(1) notice of the date, time, and location of Razo's release at least 24 hours before the release is set to occur, and

(2) within five days of this order, notice that Razo's release was effectuated.

IT IS FURTHER ORDERED that the respondents are enjoined from re-detaining Razo unless he is provided a pre-deprivation, individualized bond hearing under § 1226(a).

IT IS FURTHER ORDERED that counsel for respondents is directed to immediately provide notice of this order to the restrained parties they represent.

IT IS FURTHER ORDERED that the respondents' motion for reconsideration **[ECF No. 27] is DENIED.**

---

[49] *Id.* at 4.

[50] ECF No. 22 at 1 n.4 (quoting *Francis v. Rison*, 894 F.2d 353, 354 (9th Cir. 1990)); *see also Ex Parte Endo*, 323 U.S. 283.

The Clerk of Court is directed to SEND a copy of this order to the Warden of the Golden State Annex in McFarland, California, and CLOSE THIS CASE

_____
U.S. District Judge Jennifer A. Dorsey
July 27, 2026